UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                :        11 CR. 486 (DLI)

              Plaintiff,           :

        - against -                              :

LESTER ZABORSKI,                         :

              Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# DEFENDANT LESTER ZABORSKI'S
# SENTENCING MEMORANDUM


                                              John F. Kaley, Esq.
                                              Doar Rieck Kaley & Mack
                                              *Attorney for Lester Zaborski*
                                              217 Broadway, Suite 707
                                              New York, NY 10007
                                              (212) 619-3730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x

UNITED STATES OF AMERICA,        :        11 CR. 486 (DLI)

        Plaintiff,        :

    - against -        :

LESTER ZABORSKI,        :

        Defendant.        :

----------------------------------x

## DEFENDANT LESTER'S SENTENCING MEMORANDUM

### PRELIMINARY STATEMENT

Lester Zaborski respectfully submits this sentencing memorandum in support of his request for a sentence of time served, supervised release with the special conditions of home confinement for 12 months (with a curfew) and continued drug counseling, Mr. Zaborski, after his release on bail (he was in custody for 42 days) on August 21, 2011, has done extraordinarily well. He has been on home detention with electronic monitoring without incident since his release. He has successfully dealt with his drug addition through treatment and has, with the permission of the Court and on the consent of both Pre-trial Services and the government, sought and obtained gainful employment. His turn-around has been nothing short of remarkable. After a tortured upbringing, it is not hyperbole to say that his arrest is this case saved his life and has given him the opportunity, which he has embraced, to become a husband and father that his family rightfully is proud of. For these reasons, discussed more thoroughly in the memorandum, we ask that the Court exercise its sentencing discretion and impose a sentence "sufficient, but not

greater than necessary" to achieve the sentencing purposes of 18 U.S.C. § 3553(a), which, in our respectful view, support a sentence of time served with the special conditions noted.

### I.    BACKGROUND

Mr. Zaborski was arrested on July 13, 2011. He remained in custody, until his release on bail on August 23, 2011. On March 27, 2013, Mr. Zaborski pleaded guilty to a lesser included offence within Count Three of the Superseding Indictment, which charged him with participating in a conspiracy to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). Mr. Zaborski was a low level participant in the offence. In the parties' plea agreement, the parties agreed that Mr. Zaborski's Guidelines should be calculated based on a drug type and quantity of at least 50 kilograms of marijuana. The PSR affords Mr. Zaborski a two-level reduction for his minor role and a reduction of three-levels for acceptance of responsibility resulting in an adjusted offense level 15. The plea agreement also provides for an additional two-level reduction as part of a "global desposition," the conditions of which have been met, subject to the Court's acceptance. If Mr. Zaborski were to received this additional two- level reduction, his advisory guideline adjusted offense level would be 13, his Criminal History Category is III, with a co-commitment advisory guidelines sentencing range of 18-24 months incarceration. The PSR confirms the guidelines calculations in the plea agreement and also concludes that Mr. Zaborski's offence level is "13" in Criminal History Category is III, with the additional two-level reduction for "global desposition."

We respectfully submit, that, on the facts of this case, a sentence of time-served, with conditions, would be "sufficient, but not greater that necessary" for this 40 year old husband and father of three children, who has finally gotten his life righted, in that he has overcome a terribly

difficult childhood, successfully dealt with his drug addition and is working hard to help support his family financially. I dare to say that everything one could hope Mr. Zaborski would do to change his life he has done. In my respectful view, incarceration at this point would run counter to the progress he has made in setting his life on a right course.

## II.     THE COURT SHOULD IMPOSE A SENTENCE OF TIME SERVED WITH CONDITIONS

### A.     Introduction

The PSR has calculated an advisory Guidelines sentencing range of 18-24 months and has recommended a sentence of 18 months. In this case, however, given all the facts, a sentence of time served with conditions is sufficient but not greater then necessary to promote the goals of sentencing.

### A.     The Purposes Of Sentencing In This Case Are Satisfied By A Sentence Of Time Served

18 U.S.C.§ 3553(a) requires a court to impose a sentence that is reasonable, one that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." Section 3553 (a)(2) states that such purposes are:

> A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> B. to afford adequate deterrence to criminal conduct;
> C. to protect the public from further crimes of the defendant; and
> D. to provide the defendant with needed education or vocational training medical care, or other correctional treatment in the most effective manner.

These purposes in this case all would be satisfied by a sentence of time served with conditions.

As he will tell the Court at sentencing, Lester Zaborski has learned his lesson in this case and taken it to heart. His participation in the offense of conviction was the product of his

immaturity, poor judgment, a troubled childhood with a mother who herself was an addict, a father he never really knew and his own drug addition. He needs to get on with his life. He needs to continue drug counseling and he recognizes that need. He realizes that what he did was wrong and that he has greatly harmed his family and himself and society in general. He has a family who has remained supportive and loyal, and he has 3 children whom he wants to be with and who need him in their lives as well. Over the past 26 months of drug treatment and sobriety he has moved forward with his life in a quite positive direction. With continued drug counseling, we think that the risk of recidivism is lessened, particularly for a person of Mr. Zaborski's present age, the support of his family and the fine positive strides he has made over these many months.

Further, with respect to the need for a sentence to afford adequate deterrence to criminal conduct, we are confident that he is deterred not only because he does not want further incarceration but, even more importantly, because having regained his family, he does not want to lose his wife and children. We doubt that a greater sentence would have any bearing on deterrence as to Mr. Zaborksi. Regarding a more general concept of deterrence , there simply is no evidence that increases in sentence length reduce crime through deterrence.[1] "Three National Academy of Science panels, . . . reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A

---

[1] Of course, deterrence works in the sense that there is less crime with a criminal justice system then there would be without one. But the question here is one of "marginal deterrence," i.e., whether any particular quantum of punishment results in increased deterrence and thus less crime.

Review of Research 28-29 (2006).[2] *See also* Andrew von Hirsch, et. al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999).[3] The von Hirsch analysis, commissioned by the British Home Office, examined penalties in the United States and in several European countries. It concluded that the "correlations between sentencing severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects."

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentencing consequences in the manner one might expect. *Tonry, supra*, at 28-29. "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al., *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005). We think that is even more so in cases such as this where the offense has some genesis in immaturity, poor judgment and a person's own drug abuse. This is not to sanction offenses by drug users but rather simply to agree with the conclusions of the scholars that people generally do not consider in advance the consequences of their wrongdoing.

---

[2] This article is available on Westlaw.

[3] A summary of the von Hirsch report is available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF.

However, to the extent a deterrent effect is deemed necessary, that too, we believe, would be satisfied by a sentence in this case of time served. As noted above, Mr. Zaborski was in custody for 42 days and he has been on home detention with electronic monitoring; while that is a privilege, it also has been a restriction on his liberty. And he has flourished in a most positive way under this restriction. He has not tested positive for drugs - - not a single time, in his two plus years on pre-trial release; he has attended drug treatment and counseling 5 days per week, without fail; he has "graduated" from treatment and continues to attend after care because he knows it helps; he has re-established deep and loving relationships with his family; and he is now gainfully employed, and has been for several months and is doing quite well. He has been deterred and his future, for the first time in a long time in his life, is bright.

### C. Analysis of the 3553(a) Factors Strongly Supports Imposition of a Sentence of Time Served

18 U.S.C. § 3553(a) additionally directs a sentencing court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the guidelines sentencing range and policy statements, the need to avoid unwarranted sentencing disparities among defendants involved in similar conduct with similar criminal history, and the need to provide restitution to any victim(s) of the offense.

Further, under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The directives of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), *United States v. Crosby*, 397, F. 3d. 103 (2d Cir. 2005), and 3553(a) make clear that courts must consider all of the factors in § 3553(a), many of which the Guidelines either reject or ignore, or demand to an "extraordinary" degree. Indeed, in some cases, the Guidelines clash outright with § 3553(a)'s primary directive: "to impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing.

As the Second Circuit observed in *United States v. Jones*, 531 F.3d 163, 182 (2d Cir. 2008):

> it is the district court's particular trust to ensure the "uniform and constant" principle of the federal sentencing tradition, specifically, that "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," [citing] *Koon v. United States*, 518 U.S. at 113.

*Jones*, at 182. To secure the objectives of § 3553, a district judge must fully exercise this proper sentencing authority. *See Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2463 (2007).

Finally, it has been observed that sentencing is not an exact science. Rather it is a "fluid and dynamic process." *Irizarry v. United States*, 128 S. Ct. 2198, 2203 (2008) (citing *United States v. Vega-Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (*en banc*)). It's aim should be to impose a sentence that is reasonable and fair and just given the facts of a particular case and the facts relative to the particular person being sentenced. The overarching goal is to fashion a sentence that is sufficient, but not greater than necessary. An analysis of the § 3553(a) factors in this case, to which we now turn, militates in favor of Lester Zaborski and the imposition of a sentence of time served.

### 1. The Nature And Circumstances Of The Offense

Mr. Zaborski participated in a marijuana conspiracy, a serious offense. In some mitigation, we point out that Mr. Zaborski's participation in the offense was of limited duration (in the period of 2009-2010 (PSR ¶24)) and his role was "minor" as reflected in the minor role adjustment afforded in the PSR ¶ 76. His participation spawned from his own drug addition. He had no stake in the enterprise; he received small remuneration for his participation, which he used to support his drug addiction. As the PSR notes at ¶ 24, Mr. Zaborski was an occasional and "unreliable" participant.

### 2. The History And Characteristics of Lester Zaborski

Lester Zaborski is 40 years old. He is married and has two children ages 17 and15 with his wife, Stephanie, and a son from a prior relationship. Lester's own childhood was difficult. He has no memories of his father, who abandoned him and his mother when Lester was an infant. (PRS ¶ 97). As noted in the PRS ¶ 97, he "was reared under chaotic circumstances." His mother was a heroin abuser. He spent time with his mother and his grandparents. His grandfather was an alcoholic. (PRS ¶ 98). He received little attention. (PRS ¶ 98).

His mother was unstable and served two prison terms herself. There were constant financial problems; utility and rent bills were unpaid; there were frequent "male visitors" where they stayed. (PRS ¶ 99). His mother received public assistance most of her adult life. (PRS ¶ 100). The one positive relationship was with a step-father, who for a short time was married to Lester's mother. (PRS ¶ 100). Presently, Lester's mother is in a nursing facility and suffers from dementia, diabetes and other ailments. They have not been particularly close but as part of Lester's drug treatment he has been attempting to improve his relationship with her. With

the consent of Pretrial Services, the Government and the Court, he has visited his mother while on release. (PRS ¶ 100).

For himself, Lester's troubled life led him to drop out of high school. His history of substance abuse began in his early teens and continued until his arrest in this case. He regularly drank alcohol to excess and smoked marijuana. From time to time he binged on a combination of alcohol, marijuana and cocaine and was absent from home for days at a time. (PRS ¶ 111-113). He had received drug treatment in the past but his recovery then was not successful. (PRS ¶ 112). His first several weeks in custody on this case were spent in a detoxification program.

Through it all, his wife, Stephanie, whom he married in 1996, has stuck by him, as have his children, Kayla and Tyler, and other family members and friends. Their letters to Your Honor, copies of which are annexed hereto as Exhibit "A," are a testament to what I would call Lester's remarkable life turnaround. Their words speak for themselves and describe the changes in his life that Lester has made.

As part of the conditions of his bail release, Lester has been attending outpatient substance abuse treatment at St. Barnabas Hospital in the Bronx and successfully participated and completed that program in March of this year (it ran from October, 2011 to March 13, 2013). His treatment was 5 days per week. (PRS ¶ 114). All urine tests were negative and Lester was described by his counselor as a good role model for the others in the group. (PSR ¶ 114). Lester continues to attend Narcotics Anonymous regularly. A copy of a letter from the staff at the St. Barnabas Program together with his program completion certification and other evaluations from St. Barnabas are annexed hereto as Exhibit "B." They too attest to the turnaround of his life.

Since March of this year, Lester also has been working as a boxing trainer and youth mentor at a gym owned bu Aaron Davis, a former professional boxer. Lester earns $8 per hour and his hours have increased substantially since March. (PSR ¶117). Mr. Davis' heartfelt letter to Your Honor, which describes Lester's dedication and work and right-thinking attitude, is annexed hereto as Exhibit "C." Mr. Davis notes the change in Lester and sees great promise from him. Lester's prospects are good and he has appreciated the opportunity to help others, to contribute meaningfully to the financial support of his family and to redeem himself. There is no doubt but that his family has been instrumental in his progress and he does not want to jeopardize all that he has been able to achieve in these past two years.

3. **The Kinds of Sentence Available**

This consideration is not really a factor in this case. A sentencing court must consider all of "the kinds of sentences available" by statute, §3553(a)(3), even if the "kinds of sentence. . . established [by] the Guidelines" permit or encourage only prison. *See Gall*, 128 S. Ct. at 602 & n.11. Here, Mr. Zaborski served 42 days in custody and, by statute, Mr. Zaborski is eligible for Probation. (PSR ¶ 133).

4. **The Guidelines Sentencing Range And Guidelines Policy Statements**

    a. **The Guidelines Generally**

The Supreme Court's decision in *Booker/Fanfan* requires sentencing courts to treat the Guidelines as one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). As the Supreme Court held, the now revised Sentencing Reform Act ("SRA") requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits

the court to tailor the sentence in light of other statutory concerns as well, *see* § 3553(a). *Booker*, 125 S. Ct. at 757.

Our view further is that the Guidelines are entitled to weight no greater than that afforded to the other factors listed in § 3553(a). Any approach that automatically gives "heavy" weight to the Guidelines range comes perilously close to the mandatory regime found to be unconstitutionally infirm in *Booker*.

Judge Scalia explained this point in his dissent from *Booker's* remedial holding:

> [L]ogic compels the conclusion that the sentencing judge, after considering the recited factors (including the [G]uidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise - if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed - its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought that the Guidelines range had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the Guidelines range relative to the other Section 3553(a) factors would violate the Sixth Amendment. As Justice Scalia observed more recently in his concurring opinion in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 577 (2007), there can be no "thumb on the scales" in favor of Guidelines sentences. There is no presumption as to the reasonableness of the Guidelines sentencing ranges. *See Gall*, 128 S. Ct. 596-97. As such, in each case a court must make an "individualized

assessment" of the appropriate sentence "based on the facts presented" and the factors detailed in § 3553(a). *Id.* at 597. *See also Simon v. United States*, 361 F. Supp. 2d 35, 40 (E.D.N.Y. 2005) (Sifton, J.) (the "Guidelines are advisory and entitled to the same weight accorded to each other factor that the Court is instructed to consider by §355 3(a.)."). Additionally, judges "may vary [from the Guidelines ranges] based solely on policy considerations, including, disagreements with the Guidelines," *Kimbrough*, 128 S. Ct. at 570 (internal quotations marks omitted).

In sum, as noted previously, in every case, a sentencing court must now consider all of the Section 3553(a) factors, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. Further, as one district judge has noted, "the Guidelines may be tempered by compassion." *United States v. Kloda*, 133 F. Supp. 2d 345, 349 (S.D.N.Y. 2001) (Hellerstein, J.).

Here, in our view, Mr. Zaborski's sentencing guidelines set out in the PSR while calculated properly, do not adequately take into account the other § 3553(a) factors. Given that Mr. Zaborski was not a major player, had no stake in the overall drug activity, received little remuneration and was a drug abuser himself, and given all that he has accomplished since his release on bail, further incarceration in this case is not warranted.

   **b.**  **The PSR's Recommendation Should Not Be Followed**

The Probation Department has recommended a sentence of 18 months - - the low end of the applicable Guidelines range of 18-24 months at an Offense Level 13[4] in Criminal History Category III. The rationale for that recommendation primarily is Mr. Zaborski's prior criminal

---

[4] This includes a two-level reduction for "global" resolution provided for in the plea agreement and which we would ask the Court to afford to Mr. Zaborski.

history. While the recommendation notes that the instant offense reflects an ongoing problem with drug activity, in our respectful view, it fails adequately to take into account the very positive things that Lester has accomplished in the two-plus years since his arrest, much of which we have addressed herein but are worth mentioning again in contradiction to the PSR's recommendation:

 i) Mr. Zaborski was incarcerated for 42 days which afforded him the opportunity to take stock of his life and to deter him from future violations of law. Indeed, his wife notes in her letter that the arrest saved his life. Lester feels the same way.

 ii) Mr. Zaborski has been on home detention for over two years. We recognize that this was a privilege and are thankful for the chance that gave Lester to straighten out his life. Nonetheless, home detention, which he has served without incident, is a substantial liberty restriction so in that regard Lester has been punished to some further extent.

 iii) What goals of sentencing in this multi-defendant case would be served by further incarceration at this point in time? Our response to that question, as to this person, is "none." In the roughly 26 months since his arrest, Lester has accomplished all that one would have hoped the criminal justice system would accomplish in this case. Lester has been punished; he appears to have "learned" from this case that he must "fly straight," as we say, and that if he does not, he will land in jail for a lengthy period and lose his family in the process.

 iv) Lester has made great strides in the intervening time. He appears to have avoided any relapse into drug use and has diligently and enthusiastically addressed his past drug use. He has secured employment ro help support his family. And most importantly, he now has

a positive track record of accomplishments in which he can take pride. Incarceration at this point is not necessary and, in our view, would be a setback to all that he has accomplished.

For all these reasons, and others set forth in this memorandum, we submit that the PSR's recommendation in this case yield a sentence greater than necessary to achieve the purposes of sentencing and should not be followed.

### 5. The Need to Avoid Sentencing Disparities

Imposition of a sentence of time served in this case will not create any sentencing disparities, either nationally or locally.

First we note that the Guidelines themselves, without any empirical data, adopt a somewhat arithmetic approach to drug quantity and "in an effort to appear 'objective' tend to place great weight on putatively measurable quantities, without, however, explaining why it is appropriate to accord such huge weight to such factors." *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998).

As for the Guidelines, at least since *Booker* (and probably before), Courts have recognized the disjunct between sentences prescribed under the Guidelines and the requirement of 18 U.S.C. § 3553(a) that judges impose sentences "sufficient, but not greater than necessary," to comply with that section's objectives.

Second, we suggest that a sentence of time served with conditions for Mr. Zaborski on the facts relevant to him would not be inconsistent with or create a disparity in relation to other sentences imposed in this or in other cases.

6.  **The Need To Provide Restitution**

The need to provide some amount of restitution is not a factor in this case.

7.  **Reflecting The Seriousness Of The Offense, Promoting Respect For The Law, Providing Just Punishment, Deterring Criminal Conduct, Protecting The Public, And Providing Vocational Training**

18. U.S.C. § 3553(a) requires courts to impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training. All of these sentencing objectives can be attained by imposing a sentence of time served, supervised release, home confinement (with a curfew) for 12 months and continued drug counseling.

Lester Zaborski has redeeming qualities. He is a father who has made serious mistakes, which he recognizes. He has demonstrated an awareness of where he has gone wrong and exhibited a two-plus year track record of sobriety and a willingness to work and be the man he needs to be, all of which are worthy of the Court's favorable consideration.

Consideration of all of the factors contained in 18 U.S.C. § 3553(a), we submit, warrants imposition of a sentence of time served with conditions for Mr. Zaborski. The profile of this offender, given all of the circumstances relative to him, his life, the time already served in jail, his offense conduct and the documented positive and lasting steps he has taken militate strongly in favor of a non-jail sentence.

## CONCLUSION

For all of the foregoing reasons, we respectfully submit that the Court should impose a sentence of time served with the conditions recommended herein.

Dated: September 26, 2013
      New York, New York

Doar Rieck Kaley & Mack

By: _____
John F. Kaley (JK: 3598)
217 Broadway, Suite 707
New York, New York 10007
Tel: (212) 619-3730
*Attorney for Lester Zaborski*

To:    Stephen Tiscione, Esq.
        Assistant United States Attorney
        (Via ECF filing and e-mail)

        Ms. Mary Ann Betts
        U.S. Probation Officer
        (Via ECF filing and e-mail)